IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

FILED
IN OPEN COURT
JAN - 4 2012
CLERK, U.S. DISTRICT COURT
ALEXANDRIA, VIRGINIA

Alexandria Division

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | CRIMINAL NO. 1:12CR4 |
| | ) | |
| v. | ) | Count 1 |
| | ) | Conspiracy to Possess and Distribute |
| CHRISTOPHER LARSON, | ) | Oxycodone (21 USC § 846) |
| | ) | |
| Defendant. | ) | Count 2 |
| | ) | Attempt to Possess with Intent to |
| | ) | Distribute Oxycodone (21 USC § 846) |

INDICTMENT

JANUARY 2012 TERM - AT ALEXANDRIA

THE GRAND JURY CHARGES THAT:

From in and around May 2011 to on or about December 1, 2011, in Fairfax County, Virginia, within the Eastern District of Virginia, and elsewhere, CHRISTOPHER LARSON, the defendant herein, did unlawfully, knowingly, and intentionally combine, conspire, confederate, and agree with other persons known and unknown to the grand jury to commit the following offenses against the United States:

1. To knowingly, intentionally, and unlawfully possess with intent to distribute oxycodone, a Schedule II controlled substance, in violation of Title 21, United States Code, Section 841(a)(1); and

2. To knowingly, intentionally, and unlawfully distribute oxycodone, a Schedule II controlled substance, in violation of Title 21, United States Code, Section 841(a)(1).

## WAYS, MANNER, AND MEANS TO ACCOMPLISH THE CONSPIRACY

The primary purpose of the conspiracy was to make as much money as possible through the distribution of oxycodone in the United States and elsewhere. The ways, manner and means by which this purpose was carried out included the following:

1. It was part of the conspiracy that the defendant and his co-conspirators played different roles, took upon themselves different tasks, and participated in the affairs of the conspiracy through various criminal acts.

2. It was further part of the conspiracy that the defendant and his co-conspirators made themselves and their services available at various times throughout the conspiracy and participated in selective drug distribution ventures on an "as needed" basis.

3. It was further part of the conspiracy that the defendant traveled in interstate commerce in order to facilitate the possession of oxycodone with the intent to distribute it.

4. It was further part of the conspiracy that the defendant and his co-conspirators utilized telephone and electronic interstate communications to facilitate their drug trafficking activities.

5. It was further part of the conspiracy that the defendant and his co-conspirators used various methods to conceal the conspiracy in order to ensure the continuing existence and success of the conspiracy.

6. It was further part of the conspiracy that the defendant would commit and aid and abet in the commission of criminal offenses involving the knowing and intentional possession of controlled substances with the intent to distribute them, in violation of Title 21, United States Code, Section 841(a)(1) and Title 18, United States Code, Section 2.

OVERT ACTS

In furtherance of the said conspiracy and to effect the objects thereof, the defendant and his co-conspirators committed overt acts in the Eastern District of Virginia and elsewhere, including, but not limited to, the following:

1. In and around April 2011, CHRISTOPHER LARSON discussed with an undercover law enforcement officer his interest in obtaining oxycodone API (Active Pharmaceutical Ingredient) for purposes of manufacturing and distributing oxycodone pills.

2. In and around April 2011, CHRISTOPHER LARSON asked the undercover law enforcement officer to provide a one-gram sample of oxycodone API powder so that he could have it tested at a laboratory for purity.

3. On or about May 5, 2011, in the Eastern District of Virginia, CHRISTOPHER LARSON met with the undercover law enforcement officer and discussed his desire to purchase multi-kilogram quantities of oxycodone API (Active Pharmaceutical Ingredient) powder from the undercover officer.

4. On or about May 5, 2011, in the Eastern District of Virginia, CHRISTOPHER LARSON obtained from the undercover law enforcement officer approximately one gram of oxycodone API powder for the purpose of having it tested to determine its quality.

5. On or about May 18, 2011, CHRISTOPHER LARSON discussed with the undercover law enforcement officer his interest in obtaining five kilograms of oxycodone API powder.

6. In and around late summer 2011, CHRISTOPHER LARSON discussed with the undercover law enforcement officer his interest in purchasing a pill press machine for the purpose of manufacturing oxycodone pills in the United States.

7. On or about September 4, 2011, CHRISTOPHER LARSON discussed with the undercover law enforcement officer his interest in purchasing one kilogram

of oxycodone API powder from the undercover law enforcement officer, manufacturing oxycodone pills from the oxycodone API powder, and then distributing the oxycodone pills.

8. In and around late October 2011, CHRISTOPHER LARSON and un-indicted co-conspirator #1 discussed the purchase of one kilogram of oxycodone API powder for the purpose of manufacturing oxycodone pills for further distribution.

9. On or about November 7, 2011, un-indicted co-conspirator #1 provided CHRISTOPHER LARSON with $15,000 in United States Currency towards the purchase of one kilogram of oxycodone API powder from the undercover law enforcement officer.

10. On or about November 9, 2011, CHRISTOPHER LARSON caused $20,000 in United States Currency to be sent *via* wire transfer to a bank account maintained by law enforcement, said amount constituting partial payment for one kilogram of oxycodone API powder.

11. On or about November 10, 2011, CHRISTOPHER LARSON caused an additional $4,000 in United States Currency to be sent *via* wire transfer to the bank account maintained by law enforcement, $2,000 of which was to complete the payment for one kilogram of oxycodone API powder and the remaining $2,000 of which was to purchase the pill press machine.

12. On or about December 1, 2011, CHRISTOPHER LARSON traveled from Orlando, Florida, to the Eastern District of Virginia, for purposes of meeting with the undercover law enforcement officer and obtaining from him one kilogram of oxycodone API powder and a pill press.

13. On or about December 1, 2011, in Newington, Virginia, within the Eastern District of Virginia, CHRISTOPHER LARSON inspected the pill press machine that he had purchased for $2,000 and asked the undercover law enforcement officer to ship the machine to him in Lakeland, Florida.

14. On or about December 1, 2011, in Newington, Virginia, within the Eastern District of Virginia, CHRISTOPHER LARSON obtained from the undercover law enforcement officer a package that CHRISTOPHER LARSON believed contained one kilogram of oxycodone API powder, but which in actuality contained approximately one kilogram of heroin.

15. On or about December 1, 2011, in Newington, Virginia, within the Eastern District of Virginia, CHRISTOPHER LARSON attempted to possess with intent to distribute one kilogram of oxycodone API powder.

(In violation of Title 21, United States Code, Section 846.)

COUNT TWO

THE GRAND JURY FURTHER CHARGES THAT:

On or about December 1, 2011, in Fairfax County, Virginia, within the Eastern District of Virginia, CHRISTOPHER LARSON, the defendant herein, did knowingly, intentionally, and unlawfully attempt to possess with intent to distribute oxycodone, a Schedule II controlled substance.

(In violation of Title 21, United States Code, Section 846.)

## FORFEITURE NOTICE

Pursuant to Rule 32.2 of the Federal Rules of Criminal Procedure, the defendant, CHRISTOPHER LARSON, is hereby notified that if convicted of the violations charged in Count One and Two of this Indictment, the defendant shall forfeit to the United States any property that is traceable to, derived from, fungible with, or a substitute for property that constitutes the proceeds of his offenses and any property used or intended to be used to commit or facilitate the commission of the charged offenses, including, but not limited to, the following specific property: $24,000.00 in United States Currency.

(Pursuant to Title 18, United States Code, Sections 981(a)(1)(C), Title 21, United States Code, Section 853(a), and Title 28, United States Code, Section 2461(c)).

A TRUE BILL
Pursuant to the E-Government Act, the original of this page has been filed under seal in the Clerk's Office.

______________________________
Foreperson of the Grand Jury

Neil H. MacBride
United States Attorney

By: [signature]
Rebeca H. Bellows
Assistant United States Attorney